## MECKEL v. DAVIS et al.
### No. 8589.

Court of Civil Appeals of Texas. San Antonio.
April 8, 1931.

Rehearing Granted June 3, 1931.

Rehearing Overruled July 1, 1931.

L. W. Elliott, of Sonora, for appellant.

Lloyd Kerr, L. D. Gayer, and J. A. Thomas, all of San Angelo, for appellees.

COBBS, J.

This is a suit instituted by appellees for an injunction to restrain Ben F. Meckel, appellant, from closing a certain road across lands owned by him in Sutton county, Tex.

It was alleged that some of the appellees, plaintiffs below, reside near the road in question and are engaged in the ranching business near said road. That said road has been recognized and established and used as a public road by the appellees and other persons and by the general public, having occasion to travel through that section of Sutton county, continuously for a period of from thirty to forty years, during all which time same has been so used, traveled, and enjoyed under claim of absolute right so to do and without let or hindrance from appellant or any person whomsoever, until thirty days before the filing of the suit. That said road has been used by appellees and other persons and the public as a route of travel in going to Sonora, the county seat of Sutton county, and trading point for such persons, and for hauling ranch equipment and supplies to their several homes and ranches, and for moving live stock from place to place, and to reach the Sonora-San Angelo Highway to travel to points to which they may have occasion or necessity to go, and that said road has long since become and is now an established public road for use by appellees and the public; and that they have long since acquired and now have and are entitled to the prescriptive right to use said road. This use of the said road was open and plainly apparent to appellant.

After all the evidence was in, the court was requested to instruct a verdict for appellant, which was refused, and the jury answered, "Yes," to the following special issues:

"1. Do you find from the evidence in this case that the roadway described in plaintiff's petition was continuously used and traveled by the public generally, whenever it saw fit, for a period of ten years, or more, next preceeding the 11th day of April, A. D. 1930, substantially along and upon the same route and across the lands owned by the defendant?

"2. Do you find from the evidence that the roadway described in plaintiff's petition was continuously used and traveled by the plaintiffs, or by any of them, whenever they saw fit, for a period of ten years or more next preceding the 11th day of April A. D. 1930, substantially along and upon the same route and across the lands owned by the defendant?"

"4. Do you find from the evidence that such use and travel of said road on the part of the public was open and notorious and adverse to the defendant and without objection by him?

"5. Do you find from the evidence that the use and travel of said road on the part of the plaintiffs, if any, was open and notorious and adverse to the defendant and without objection by him?"

Thereupon the court rendered judgment in favor of appellees and this cause is properly before this court for decision.

The court did not err in overruling defendant's request for an instructed verdict, because the evidence established the use of the roadway by appellees, clearly and without contradiction, for the full period of time to establish a public road by user of said land.

During the use of said road no one had been required to get any permission to travel over it. And during all that time the road had never been obstructed so that the people could not pass over it at will. Many herds

of sheep and cattle were driven over that road to market, in plain view of appellant, and no one stopped or interfered with them in any way. It is true that there were four gates to be passed through, but they offered no obstruction, as they were readily and easily opened for passage along said road.

For many years the people traveled over this road at will and unrestrained, until they had acquired a public right to do so. If appellant did not actually give the right by words, he did so by acquiescence. The road was worked some by those using it—not to a great extent, but sufficiently so—from time to time.

J. Carlisle, one of the witnesses, testified: "At one time I lived in the settlement where this road is that's involved in this case; for six years I owned land up there; I sold out and left there in April; that would be, practically speaking, six years preceding the filing of this case. I was ranching up there. Before that time I was familiar with this road; I traveled it off and on for twenty-one years that I have known it. As to who traveled the road during the time; the neighborhood all traveled it—the Mittel ranch people and Joe Trainer and others, and I would see cars that I didn't know the people, and I would judge that they came from the Bailey ranch; I saw them when I lived there, and before I lived there I did windmill work, and I would see people on the road; I was doing windmill work over the country. During the time that I have known the road it had the same general character of travel and use; at times this Angelo road would be bad and people would swing around that way to go into Sonora with their supplies from San Angelo. During this time I have never known of anyone having to get permission to go through there. As to whether or not it has been called a public road by people; I taken it for granted people considered it a public road."

Others testified to the same effect.

If appellant did not see fit to stop the use of the road by his own act or by resort to the courts, then he would be acquiescing in the use of the road over his land and this would be construed to be by his "permission" and could never be adverse. It is like the old joke about the way they construed the pistol law in a certain western county. If the fellow was standing still he was not "carrying" the pistol, and if he was moving around he was "traveling."

We find no error committed that requires a reversal, and the judgment is affirmed.

### On Motion for Rehearing.

SMITH, J.

The road in controversy was nothing more than a section of a neighborhood ranch road, maintained by neighboring ranchmen, primarily for their own and each other's convenience, although it is true, incidentally, that other members of the general public have occasionally traveled over it.

That section of the road here in controversy, which traversed appellant's ranch, was maintained and kept in repair exclusively by him, at his own expense, and he used it himself just as his neighbors did. The county authorities have never taken official cognizance of it as a public road; have assumed no dominion over it, exercised no rights over it; have never had it worked or repaired, or regarded it as a public road for any purpose.

Appellant's predecessor in title asserted affirmative dominion over it years ago by building and maintaining fences across it at four different points. It is true that he placed gates at those points, thereby evidencing his willingness to permit his neighbors to continue to share with him the use of the road, subject to the restraint imposed upon this travel by the obstructing gates. Those who availed themselves of this use recognized and respected the restraint by always closing the gates behind them, and by notifying him in advance when they desired to drive their herds through the gates and over the roadway across his ranch. No one was ever heard to object to this restraint, by word or act; all acquiesced in it. He continued his dominion over the road by maintaining and repairing it in his own way and time, and at his own expense, and those who had theretofore used it continued to do so in the face of those obvious conditions, without complaint. Such use was in no sense adverse to appellant, since it was with his open and obvious permission, and subject to the restraints imposed by him and the dominion asserted by him in retaining and exercising the exclusive control of the maintenance of the road.

If those using the road thought they had any rights in the road adverse to appellant, they could have asserted their claims by disregarding the gates and by asserting the right and assuming the burden of maintaining and keeping the road in repairs in their own way and at their own expense. They did not do this, but on the contrary acquiesced in appellant's dominion and control, without objection or other words or acts negativing the natural effect of such acquiescence, thereby recognizing appellant's claim of dominion just as effectively as if they had expressly done so in writing.

These beneficiaries of appellant's neighborliness, who have so long enjoyed this permissive use of his premises, ought not now be allowed to repudiate their acts of acquiescence in his dominion over these premises, and by the same token convert them into a prescriptive right of their own to such dominion. If the road has now become a public necessity,

appellees have the privilege of procuring its establishment by petitioning the county authorities to exercise the right of eminent domain by condemning the land and paying appellant for it, as contemplated in our organic law.

The finding of the jury, that the public use of the roadway was adverse to appellant, is without any evidence, either direct or circumstantial, to support it; but, on the other hand, it is in my opinion contrary to all the evidence in the case.

The judgment appealed from is in direct conflict with the holding of this court in Weber v. Chaney, 5 S.W.(2d) 213, and the numerous authorities therein cited. The Supreme Court approved our holding in that case by denial of a writ of error therein, and a majority of this Court see no reason to now repudiate that holding.

Appellant's motion will be granted, and the judgment reversed and the cause remanded.

FLY, C. J.

I concur in the foregoing opinion of Associate Justice SMITH.

COBBS, J. (dissenting).

The use of the road by the owner as others used it possessed no significance. The public used this road without objection or protest, but on the contrary the owner placed gates, thereby saying to the public you are to pass this way, this indicates a permissive right to user. A person has no right to allow the public to use a road for a number of years, then before the expiration of the statutory right of possession, after rights have grown up, suddenly without rhyme or reason stop them. The fact that no one was heard to object to the so-called restraint, by word or act, cannot be construed as to them to mean they acquiesced. Acquiesced to what?

My understanding is that the continued and undisputed claim of right is evidenced by the public use and not as claimed to be a subservience. It will not do to say to show their claim as a user they should assume the burden of maintaining and keeping the road in repair. It is not shown that any agreement existed or obligation was imposed by its use.

The rule of acquiescence has no application to a person who seeks to hold property by user. The two propositions are antagonistic. We do not quite understand the meaning of our associate in his opinion.

Of course, we understand one way to secure a road is by condemnation, but that is not the only way. I cannot agree with my associate that the finding of the jury is without evidence, nor do I agree to the statement that the original opinion is in conflict with Weber v. Chaney (Tex. Civ. App.) 5 S.W.(2d) 213, which is obviously distinct.

A careful reading shows the use of this road by the public for many years, more than ten, at the same time some work had been done by some of these users, all with the knowledge of the owner, who, if he did not give a direct right to its use, did so by his knowledge and presumed assent. Boone v. City of Stephenville (Tex. Civ. App.) 37 S.W. (2d) 842.

We have no doubt as to the correctness of our views as expressed, so the judgment must stand affirmed, and I dissent from the majority opinion, this day handed down.