### McCALL et al. v. ALPINE TELEPHONE CORPORATION.

#### No. 4312.

Court of Civil Appeals of Texas. El Paso.

Jan. 20, 1944.

Rehearing Denied March 9, 1944.

Morriss & Morriss, of San Antonio, and Frank O. Ray, of Alpine, for appellants.

Robertson, Leachman, Payne and Gardere & Lancaster, all of Dallas (Geo. P. Gardere, of Dallas, of counsel), for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of Brewster County. W. D. McCall, individually and as next friend for his minor son, Earl McCall, sued the Alpine Telephone Company to recover damages for personal injuries to his said son alleged to have been proximately caused by the negligence of said Company. The trial was before the court with a jury, submission on special issues. Judgment was entered on the verdict in favor of the defendant Company, and plaintiffs have perfected this appeal therefrom.

The parties will be here designated as they were in the trial court.

There is no question as to the sufficiency of the pleadings and it is deemed unnecessary to summarize same. All issues submitted were raised by the pleadings. No serious conflict appears in the testimony.

Earl McCall, the minor son of plaintiff, with a companion, was returning between 9:30 and 10 o'clock P. M. from a carnival held in the eastern portion of the City of Alpine. Oscar Moses was proceeding west along Holland Avenue in an automobile with his wife and several others. When the automobile overtook the two boys they solicited a ride. Mr. Moses acceded to their request, plaintiff's son getting on the right running board, his companion on the left, and the car proceeded west on the right hand side of Holland Avenue at from ten to fifteen miles per hour. While so proceeding west, between the intersections of North Cockrell and North Phelps Streets with Holland Avenue another automobile approached from the west along Holland Avenue, and as the two cars approached, the one going east swerved to its left, the lights of this car momentarily blinded Mr. Moses and he swerved his car to the right. The right fender of the Moses car struck a glancing blow on a telephone pole and Earl, plaintiff's minor son, sustained serious, permanent and disabling injuries. This pole was the property of the defendant, and it was located in Holland Avenue outside the curb on the north part of that street.

In 1929, by ordinance the City of Alpine granted to S. G. Smith a franchise to operate a telephone company in the City of Alpine. Section 11 of this ordinance is as follows: "All poles of the said telephone lines shall and must be placed on the outer edge of the side walks next the curb line inside the curb stone, unless otherwise designated by the City of Alpine, Texas; provided, however, that no poles shall be placed in the driveway of any street or alley, nor in any manner to incommode public travel on such streets or alleys; and provided further poles located in the business portion of the said City shall be not less than thirty feet in length; and all poles shall be of good substantial quality."

Defendant by purchase succeeded to this franchise and at all relevant times has operated the telephone company in the City of Alpine. Just when defendant succeeded

to the franchise granted Smith does not appear; whether the pole in question was placed there by defendant or by its predecessor in title does not appear. That it had been in the location where it now is for a number of years does appear.

This appeal raises two material points:

(1) Did the court err in overruling plaintiff's objection to special issue No. 1?

(2) Did the court err in refusing to grant a new trial on account of misconduct of the jury?

It is deemed best to set out the issues in full, with the jury's findings thereon, save the issues and findings as to damages and defensive issues of defendant found in favor of plaintiffs.

"Special Issue No. 1: Do you find from a preponderance of the evidence that the defendant, Alpine Telephone Corporation, was negligent in maintaining the telephone pole complained of at the place it was maintained on Holland Avenue? Answer: No.

"Special Issue No. 2: Do you find from a preponderance of the evidence that such negligence, if any you have so found in answer to the special issue above, was the proximate cause of plaintiff's Earl McCall, injuries, if any, sustained by him on or about June 8, 1939? Answer: No.

\* \* \* \* \*

"Special Issue No. 7: Do you find from a preponderance of the evidence that the accident in question was not an unavoidable accident? Answer: It was not the result of an unavoidable accident.

\* \* \* \* \*

"Special Issue No. 9: Do you find from a preponderance of the evidence that the way and manner in which the east bound automobile was being driven immediately prior to the accident in question constituted and was the sole proximate cause of the accident? Answer: Yes.

\* \* \* \* \*

"Special Issue No. 11: a. Do you find from a preponderance of the evidence that Earl McCall's riding on the right hand running board of the automobile being driven by Oscar Moses, was negligence, as that term has been hereinbefore defined to you? Answer: Yes.

"b. Do you find from a preponderance of the evidence that such negligence, if any you have so found in answer to the special issue above, proximately caused or proximately contributed to cause the accident in question? Answer: Yes.

"Special Issue No. 12: a. Do you find from a preponderance of the evidence that Earl McCall's riding on the right hand running board of the Moses automobile with his back turned to the north was negligence, as that term has been hereinbefore defined to you? Answer: Yes.

"b. Do you find from a preponderance of the evidence that such negligence, if any you have found in answer to the special issue above, proximately caused or proximately contributed to cause the accident in question? Answer: Yes."

In our opinion the judgment for defendant has for its basis solely the finding acquitting defendant of negligence. True the verdict found contributory negligence of plaintiff's son. These findings conflict with the finding of special issue No. 9. In response to that issue it is found in substance the way and manner the east bound car was operated was the sole proximate cause of the accident. The findings are in direct conflict.

Where findings are conflicting, the effect is to nullify such conflicting findings. In such case neither may serve as the basis of a judgment. It is the same as if no findings were made on the issues. Fidelity & Casualty Co. v. McLaughlin, 134 Tex. 613, 135 S.W.2d 955; Duff v. Roeser & Pendleton, Tex.Civ.App. 96 S.W. 2d 682.

Plaintiff objected to special issue No. 1 in substance that the issue submits as an issue of fact the negligence of the defendant, when the proof established such negligence beyond issue. The objection being sufficiently specific to call the court's attention to wherein negligence was shown, if the proof did establish such negligence, the case should be reversed unless, as a matter of law, it appears a verdict should have been instructed in favor of defendant.

That a violation of the law constitutes negligence is well established. The case of Shippers' Compress & Warehouse Co. v. Davidson et al., 35 Tex.Civ.App. 558, 80 S.W. 1032 (writ denied), is specific authority for the proposition that a violation of the law respecting obstructing a street or road constitutes negligence; further, the obstruction of a city street without authority from the city constitutes a violation of the Penal Code 1895, Art. 480,

now Art. 784, Vernon's Ann.P.C., save as to a change as to the penalty. In accord with the case just above referred to is Hoffman v. Bynum, Tex.Civ.App., 101 S.W.2d 600.

■ The fact that the obstructed portion of the highway was not used at the time for travel is not a defense to a wilful obstruction thereof. Robinson v. State, Tex.Cr.App., 44 S.W. 509.

■ The franchise granted S. G. Smith, to which defendant succeeded, presents the only justification for maintaining the telephone pole in the street of the City of Alpine. In short, it was a local company. Athens Tel. Co. v. City of Athens, Tex. Civ.App., 163 S.W. 371; Athens Tel. Co. v. City of Athens, Tex.Civ.App., 182 S.W. 42, writ refused; Fink v. City of Clarendon, Tex.Civ.App., 282 S.W. 912.

■ It seems logical then that the location of the telephone pole in the street in violation of this franchise would be a violation of Art. 784 of the Penal Code, the element of wilfulness of the act appearing as required by that article. However, to constitute an act forbidden by penal law negligence per se, all of the essential elements of the crime must appear from the evidence. The degree of proof it is true differs, but in a civil action the essential elements of the crime must be shown, we think.

There was evidence that this pole had long been maintained by defendant. As to whether defendant or its predecessor in title erected this pole does not appear; just where the north curb of Holland Avenue was at the time of the erection of the pole does not appear. The sidewalk directly opposite the pole was constructed subsequent to the erection of the pole.

■ The erection of obstructions on a highway must be wilful to constitute violation of Art. 784 of the Penal Code. Laroe v. State, 30 Tex.Cr.R. 374, 17 S.W. 934; Martin v. State, 72 Tex.Cr.R. 454, 162 S.W. 1145.

■ In our opinion the evidence was insufficient to establish as a matter of law the violation of Art. 784. The basis of our opinion is the belief that wilfulness in the erection of the pole was not proven beyond issue. Further, Art. 784 perhaps does not apply to the passive maintenance of the pole if it was erected by defendant's predecessor in title.

Plaintiff contends that the undisputed evidence shows the pole was maintained in violation of the franchise. This contention must be sustained, we think. As has been said, the franchise was the only lawful justification for the maintenance of the pole in the street. Defendant was operating under a franchise for a local telephone company.

■ The unauthorized maintenance of a telephone pole in a street is a public nuisance. Compton v. Waco Bridge Co., 62 Tex. 715; Santa Fe Townsite Co. v. Norvell, Tex.Civ.App., 207 S.W. 960; Dozier v. City of Austin, Tex.Civ.App., 253 S.W. 554; Joseph v. City of Austin, Tex. Civ.App., 101 S.W.2d 381, writ denied.

The maintenance of the pole in an unauthorized position was a public nuisance because it was in derogation of common right.

When this portion of the sidewalk was constructed the pole was outside the curb, the north side of the pole being about one inch south of said curb. Just when this sidewalk was constructed does not appear, but it was undisputed that this pole was knowingly maintained by defendant in Holland Avenue outside the curb line for a long period. Mr. Jennings testified he acquired the telephone company in 1938 and the pole was there at that time. Mr. Votaw, who constructed or had constructed the sidewalk passing to the north of the pole, testified that at the time the walk was so constructed the pole had been erected. There is no evidence that the City of Alpine ever passed any ordinance regulating the grades or width of the sidewalks on Holland Avenue.

■ The question is not without difficulty. In this case it seems reasonable that the franchise referred to the curb line as it existed in fact or might thereafter exist in fact. One owning residence property in an incorporated town has a right to maintain a sidewalk on the portion of the street abutting on his property so long as he does not unduly encroach on the street so as to impede traffic by vehicles. If regulated by ordinance, it would be the duty of such owner to comply with such ordinance in the erection of his sidewalk. In the absence of ordinance, we think he may make reasonable appropriation of the street for such purpose. Such reasonable appropriation is not an obstruction of traffic, but rather in

the furtherance thereof. In populated city, town or village areas it is the universal custom that sidewalks exist on either side of the street, or in any event that a passage on either side of the street is appropriated for pedestrian traffic. Furthermore, if the pole had been erected in conformity with the ordinance the burden was upon the defendant to make this showing; if same had been erected by another, if this were a defense, the burden was upon the defendant to make the showing.

We hold the evidence established a prima facie case of violation of the ordinance which is not rebutted by the defendant—not rebutted because it failed to show a right to maintain this pole in the public street at the place it was maintained. Further, that the maintenance of such pole in the street without legal authority was a public nuisance, and that one sustaining damage as a proximate result of the maintenance of the pole is entitled to recover damages therefor unless precluded by contributory negligence.

There is no merit in the contention of defendant that the evidence showed as a matter of law that the existence of the pole outside the curb line was not the proximate cause of plaintiff's injuries. Alice, Wade City & C. C. Telephone Co. v. Billingsley, 33 Tex.Civ.App. 452, 77 S.W. 255, writ denied; Shippers Compress Warehouse Co. v. Davidson, 35 Tex.Civ.App. 558, 80 S.W. 1032, writ denied.

In view of the fact that there is some doubt in our minds as to the correctness of our holding that the maintaining of the pole outside the curb constituted same a public nuisance as a matter of law, we shall discuss the assignments of plaintiff relating to misconduct of the jury.

The charge of misconduct is substantiated only by the testimony of one juror. Juror Smith, on the hearing on the motion for a new trial, testified in substance that the subject came up as to plaintiff's son's behavior; that one of the jurors said it wasn't very good; that the question came up as to whether plaintiff's son was a good, obedient boy or an unruly boy, and that juror Nichols said he was not an obedient boy. The juror further testified, in substance, that he asked the question if he (plaintiff) had accepted any money outside his own money that had been given to help the cause of taking care of the boy; that juror Decie said there had, but didn't say how much. We take it a fair construction of this testimony is that plaintiff had accepted money to care for his injured son. It appears that question number one had already been answered at the time these matters took place. There is no evidence that· issue No. 1 was in any way discussed after it was answered. This fact warranted a finding by the trial court that the finding on the material issue submitting the plaintiff's case was uninfluenced thereby.

Furthermore, the only possible harmful tendency the statement as to the boy being disobedient could have had was to excite prejudice against him or affect his credibility as a witness. That prejudice could be excited by such a casual remark as we have here reflected is, we think, highly improbable. As to reflecting on the boy's credibility, there was no real conflict in the testimony. We have not here a case like that of Elizondo v. Reagan, Tex.Com.App., 55 S.W.2d 540, where the disposition of the case depended almost solely on the credibility of the witnesses and there was a sharp conflict in the testimony. There could be no tendency to excite prejudice by the remark that someone had assisted the father in the matter of paying the expenses incident to his son's injury. The tendency might be to excite sympathy rather than prejudice. To justify the granting of new trial on the ground of a communication made to the jury or on account of testimony received under the terms of Rule 327, Texas Rules of Civil Procedure, same must be material.

Plaintiff and his wife each testified on the hearing of the motion for a new trial that after the verdict was returned and just after the jury was discharged, juror Ezell and Mr. Al Jennings shook hands and Ezell said to Jennings, "I did all I could." We presume that Jennings was the same gentleman testifying that he owned the Alpine Telephone Company. Granted that the trial court believed the testimony, which was uncontradicted, and if untrue the means of contradiction were available to defendant, in our opinion this testimony did not show as a fact beyond issue such bias in favor of defendant that plaintiff was deprived of a fair trial. We are loath to hold that the ex parte declarations of a discharged juror may destroy a verdict.

Before leaving the question of misconduct, however, it is but fair to mention that there are two findings by the jury in the record against the undisputed evidence. The jury found that neither plaintiff nor his minor son suffered any damage by reason of the son's personal injuries. The following is from the statement under appellee's second counter point: "Earl McCall, then 14 years old was injured June 8, 1939, around 9:30 P. M. by his body striking one of appellee's telephone poles, in the downtown area of Alpine; as a result of which he lost his left arm, the practical use of his right arm, and suffered injury in his right leg and sustained other injuries; up to that time he had been working, earning money; and had helped appellant at home; unable to work since; had sundry operations and suffered much pain; and appellant had incurred such expense, in consequence of the injuries—all undisputed."

It is clear that in view of the finding on special issue No. 1, the finding as to damages was immaterial. In the case of Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334, it was held that the answering of such issues contrary to the undisputed evidence would not justify a finding that prejudice or improper influence was responsible for the jury's answers convicting plaintiff of contributory negligence when there is in the record evidence supporting those answers, and no evidence that prejudice or improper influence entered into or caused them. It is, however, stated that the mere fact of such findings contrary to the undisputed evidence may justify a suspicion of such prejudice or improper influence.

Here, as in the Andrade case, it is impossible to justify, excuse or explain the findings of the jury on the issue of damages. We take it that any juror would know that no damages could be recovered if none were found to exist; further, that a juror of ordinary intelligence would perhaps know that in the event of answering question No. 1 in the negative, no damages could be recovered. However, the communications received by the jurors were of such an immaterial nature we do not believe that a finding of probable injury is justified. The transaction between Mr. Jennings, the owner of the defendant, and Mr. Ezell, if it occurred, was certainly in bad taste, but it was after the verdict had been returned.

There is one other matter, although it does not appear in the briefs, in view of the possibility of another trial in this case that should be mentioned. In special issue No. 4, in submitting the measure of damages of W. D. McCall, the court charged in part: " * * * and, also, if you further believe that said plaintiff, W. D. McCall, had a reasonable expectation of receiving from his said son, considering his position and ability, contributions to said plaintiff's W. D. McCall, wants and necessities after said son reached his majority, then said plaintiff, W. D. McCall, is entitled to recover what pecuniary aid he had a reasonable expectation of so receiving, if any, after his said son reached the age of 21 years."

This element of damage would be recoverable had the plaintiff been suing for the death of his minor son. It is not proper in a case where it is to recover damages for injury to a minor son not resulting in death.

For the error in the charge submitting negligence as an issue of fact, it is ordered that the case be reversed and remanded.

On Motion for Rehearing.

Appellee in its motion for rehearing insists that the answer of the jury to special issue No. 2 was sufficient in and of itself to support the judgment in its favor.

It is thought that, in view of the phrasing of special issues Nos. 1 and 2, the issue the jury really passed upon in answering issue No. 2 was whether or not a nonexistent quality of an act was the proximate cause of the injury. Issue No. 2 was not as to whether or not the act in question was the proximate cause. Finding the act did not have the quality of negligence, the answer that that quality was not the proximate cause was a necessary logical consequence. It is thought the phrasing of special issue No. 2 conditioned the answer thereto on an affirmative answer to Issue No. 1; further that an answer to an unsubmitted issue cannot be the foundation of a judgment.

Issues Nos. 1 and 2 are copied in the opinion. We think a fair paraphrase of special issue No. 2 would be as follows: "If you have found in answer to Special Issue No. 1 negligence, was such negligence the proximate cause of plaintiff's injuries?"

So phrased, it could not be logically contended that the answer of special is-

sue No. 2 was not conditioned on an affirmative answer to special issue No. 1. If it was not negligence to so place the pole in Holland Avenue, such negligence, because of its nonexistence, was not the proximate cause of the injury.

The answer to special issue No. 2 is based on a false premise. Had question No. 2 submitted whether or not the location of the pole in Holland Avenue was a proximate cause of the injury, a different question would be presented. By no stretch of imagination can special issue No. 2 be held to specifically submit that issue. It is not thought that same is even submitted in No. 2 by any fair implication.

It is ordered that the motion for a rehearing be in all things overruled.

McGILL, J., was Special Commissioner on January 20, when case was decided, but as associate Justice concurred on rehearing.